UNITED STATES DISTRICT COURT
Southern District of Florida

Case No.: 05-20384

ALLEN E. WEINTRAUB,

    Plaintiff,

vs.

DARK DYNAMITE, INC. f/k/a
NCI HOLDINGS, INC. f/k/a VECTOR
HOLDINGS CORPORATION, a Nevada
corporation, JARED D. GOLD, RICHARD
SURBER and GREENTREE FINANCIAL
GROUP, INC., a Florida corporation d/b/a
BONGIOVANNI & ASSOCIATES,

    Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, ALLEN E. WEINTRAUB, sues the Defendants, DARK DYNAMITE, INC. f/k/a

NCI HOLDINGS, INC. f/k/a VECTOR HOLDINGS CORPORATION, a Nevada corporation,

JARED D. GOLD, RICHARD SURBER and GREENTREE FINANCIAL GROUP, INC., a Florida

corporation d/b/a BONGIOVANNI & ASSOCIATES, and alleges:

1.    Plaintiff, ALLEN E. WEINTRAUB ("WEINTRAUB"), is a Florida resident, whose

principal residence is located in the Southern District of Florida.

2.    Defendant, DARK DYNAMITE, INC., is a Nevada corporation with its principal

place of business in Salt Lake City, Utah.

3.    Defendant, JARED D. GOLD, is an individual residing in the State of Utah.

4.    Defendant, RICHARD SURBER, is an individual residing in the State of Utah.

5.      Defendant, GREENTREE FINANCIAL GROUP, INC., is a Florida corporation with its principal place of business in Pompano Beach, Florida.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as certain of the Plaintiff's claims arise under the laws of the United States, specifically Plaintiff's federal securities claims under 15 U.S.C. §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  This Court has supplemental jurisdiction of all the other of Plaintiff's claims as they are so related to claims in this action within such original jurisdiction of this Court pursuant to 28 U.S.C. §1367(a).

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) .

## GENERAL ALLEGATIONS

8.      On February 14, 2003, DARK DYNAMITE, INC. executed and delivered a Promissory Note (the "Note") to WEINTRAUB in the amount of $100,000.00.  A true and correct copy of the Note is attached hereto as Exhibit "A".

9.      The sums due under the Note represent a renegotiated debt due from DARK DYNAMITE, INC. to a Florida corporation, formerly known as Miami Venture Capital, Inc., controlled by WEINTRAUB.

10.     WEINTRAUB received an assignment of this debt from Miami Venture Capital, and DARK DYNAMITE, INC. reassumed the renegotiated sum now due to WEINTRAUB as represented in the Note.

11.     The terms of an Addendum to the Note provide that the full sum of the debt in the amount of $472,927.00, plus interest at eighteen (18%) percent, shall be due in the event of a default by DARK DYNAMITE, INC. under the terms of the Note or in the event of a default under the terms

of an employment agreement between WEINTRAUB and DARK DYNAMITE. A true and correct copy of the Addendum to the Note is attached hereto as Exhibit "B".

12. Simultaneously with the execution of the Note, DARK DYNAMITE, INC. also entered into an Employment Agreement with WEINTRAUB, pursuant to which DARK DYNAMITE, INC. employed WEINTRAUB. A true and correct copy of the Employment Agreement is attached hereto as Exhibit "C".

13. WEINTRAUB has performed his obligations required to be performed on his part under the Employment Agreement.

14. DARK DYNAMITE, INC., however, is in default of its obligations under the Employment Agreement by failing to make either cash or stock payments due to WEINTRAUB.

15. More specifically, the first payment installment in the amount of $37,500.00 was due under the Employment Agreement on or before May 14, 2003. DARK DYNAMITE, INC. never made this payment to WEINTRAUB.

16. Paragraph 3 of the Addendum to the Employment Agreement provides that all sums due under the Employment Agreement in the amount of $150,000.00 shall be due and payable at once in the event of a default by DARK DYNAMITE, INC. of the Employment Agreement.

17. On May 16, 2003, WEINTRAUB notified DARK DYNAMITE, INC. of its default under both agreements, triggering an acceleration of all sums due under both the Employment Agreement and Note. A copy of the Notice of Default is attached hereto as Composite Exhibit "D".

18. On or about September 15, 2000, Miami Venture filed and perfected a UCC-1 financing statement in Florida to secure all obligations owed from DARK DYNAMITE, INC. to Miami Venture. See Exhibit "E".

19. On or about May 23, 2003, Miami Venture filed and perfected a UCC-1 financing

statement in Arizona to secure all obligations owed from DARK DYNAMITE, INC. to Miami Venture. See Exhibit "F".

20.     On or about May 23, 2003, Miami Venture filed and perfected a UCC-1 financing statement in Utah to secure all obligations owed from DARK DYNAMITE, INC. to Miami Venture. See Exhibit "G".

21.     Weintraub has received an assignment of the right s attendant to the above-referenced UCC-1 financing statements.

22.     DARK DYNAMITE, INC. is a publicly traded company that is in default under both the Note and the Employment Agreement.

23.     DARK DYNAMITE, INC.'s unregistered common stock certificates in treasury are being held by and controlled by Standard Registrar & Transfer Company ("Standard").

24.     Standard is a stock transfer company registered with the Securities and Exchange Commission. Standard is located in the State of Utah and controls the stock of DARK DYNAMITE, INC. in the State of Utah.

25.     DARK DYNAMITE, INC. has changed its name to Dark Dynamite, Inc., after changing its name to NCI Holdings, Inc., after entering into the subject agreements with WEINTRAUB. Proof of DARK DYNAMITE, INC.'s recent name change is attached hereto as Exhibit "H".

26.     DARK DYNAMITE, INC. has further demonstrated an inclination to defraud the public by altering Securities and Exchange Commission filings in a manner that was not truthful. On June 6, 2003, WEINTRAUB informed DARK DYNAMITE, INC. that its revised Form 10Q, effective September 30, 2002, misrepresented certain information regarding Miami Venture. A copy of WEINTRAUB's e-mail to DARK DYNAMITE, INC. is attached hereto as Exhibit "I".

27.     DARK DYNAMITE, INC. and its agents and officers have engaged in behavior to deceive the public and its stockholders and information released to the public and in dealing with its stock.

28.     On or about June 6, 2003, WEINTRAUB informed DARK DYNAMITE, INC. and GREENTREE FINANCIAL GROUP, INC. and BONGIOVANNI & ASSOCIATES through MICHAEL BONGIOVANNI that its revised Form 10Q, effective September 30, 2002 misrepresented certain information regarding Miami Venture. A copy of Plaintiff's e-mail to DARK DYNAMITE, INC. is attached hereto as Exhibit "J".

29.     During 2004 DARK DYNAMITE, INC. engineered a reverse stock split of its shares of common stock, allegedly to increase the per share price of its common stock, to reduce the outstanding number of shares of common stock and provide management of the company with flexibility to issue shares, allegedly, to facilitate future stock acquisitions and financing for the company as well as other alleged reasons.

30.     Notwithstanding the foregoing, subsequent to the reverse stock split, in its Form 10-QSB Quarterly Report for the quarterly period ending September 30, 2004, the company noted that the Board of Directors and the majority of the voting rights held by shareholders had approved an amendment to the number of authorized shares of common stock of the company.  Upon the filing of the Amended Articles of Incorporation the company would be authorized to issue 5,000,000,000,000 (sic) shares of common stock, $0.001 par value per share.

31.     In its Schedule 14C Information Report dated November 9, 2004, the company reported to its stockholders that an Amendment to the Articles of Incorporation increasing the number of authorized $0.001 par value shares of common stock had increased to 5,000,000,000.

32.     In both of the aforementioned instances the number of preferred shares authorized would remain at 5,000,000.

33.     In addition, on November 15, 2004, DARK DYNAMITE, INC. filed a "Post Effective Amendment No. 4 Form S-8 Registration Statement" under the Securities Act of 1933 regarding the "Amended 2004 Benefit Plan of Dark Dynamite, Inc."  The Registration Statement noted that the Post Effective Amendment No. 4 was being filed to reflect that the Board of Directors of DARK DYNAMITE, INC. had amended the Benefit Plan three (3) prior times and the particular Fourth Amendment would increase the number of shares included in the plan from, "1,000,450,000 (sic)" "1,450,000,000" shares to 2,450,000,000 shares.  These actions were taken by Defendant, DARK DYNAMITE, INC., by Defendant, JARED D. GOLD, and by Defendant, RICHARD SURBER, as President and Director of the company and as consultant and as a person holding a majority of the outstanding voting securities of the company required to effect the increase in the number of authorized shares.

### COUNT I - STOCK FRAUD, 15 U.S.C. §10b, RULE 10b-5

### AGAINST DARK DYNAMITE, INC.

34.     Plaintiff reaffirms and realleges paragraphs 1 through 7 and 26 through 33 as if fully set forth herein.

35.     Defendant through its manipulating of the market for its shares, using deceptive filings, devaluing shares and otherwise defrauding Plaintiff has caused Plaintiff damages.

36.     Plaintiff has retained the undersigned attorneys and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, ALLEN E. WEINTRAUB, demands a Judgment for damages against Defendant, DARK DYNAMITE, INC., for an amount in excess of $100,000.00 plus

consequential damages, interest, court costs and reasonable attorneys' fees pursuant to applicable Statutes and Rules.

COUNT II - STOCK FRAUD, 15 U.S.C. §10b, RULE 10b-5

AGAINST JARED D. GOLD

37.     Plaintiff reaffirms and realleges paragraphs 1 through 7 and 26 through 33 as if fully set forth herein.

38.     That at all times material hereto, Defendant, JARED D. GOLD, was the President and Director of Defendant, DARK DYNAMITE, INC.  All the actions taken by Defendant, DARK DYNAMITE, INC., were taken at the direction and with the knowledge and the intent to deceive of JARED D. GOLD.

39.     Defendant through its manipulating of the market for its shares, using deceptive filings, devaluing shares and otherwise defrauding Plaintiff has caused Plaintiff damages.

40.     Plaintiff has retained the undersigned attorneys and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, ALLEN E. WEINTRAUB, demands a Judgment for damages against Defendant, JARED D. GOLD, for an amount in excess of $100,000.00 plus consequential damages, interest, court costs and reasonable attorneys' fees pursuant to applicable Statutes and Rules.

COUNT III - STOCK FRAUD, 15 U.S.C. §10b, RULE 10b-5

AGAINST RICHARD SURBER

41.     Plaintiff reaffirms and realleges paragraphs 1 through 7 and 26 through 33 as if fully set forth herein.

42.     That at all times material hereto, Defendant, RICHARD SURBER, was a consultant to Defendant, DARK DYNAMITE, INC., and its President, JARED D. GOLD, and controlled, either individually or through entities over which he had direct control and supervision sufficient shares of the common stock of DARK DYNAMITE, INC., to effect the actions as complained of herein and control of the all of the preferred stock of DARK DYNAMITE, INC.

43.     That all the actions of DARK DYNAMITE, INC. complained of herein were done with the knowledge and at the direction of Defendant, RICHARD SURBER.

44.     Defendant through its manipulating of the market for its shares, using deceptive filings, devaluing shares and otherwise defrauding Plaintiff has caused Plaintiff damages.

45.     Plaintiff has retained the undersigned attorneys and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, ALLEN E. WEINTRAUB, demands a Judgment for damages against Defendant, RICHARD SURBER, for an amount in excess of $100,000.00 plus consequential damages, interest, court costs and reasonable attorneys' fees pursuant to applicable Statutes and Rules.

### COUNT IV - STOCK FRAUD, 15 U.S.C. §10b, RULE 10b-5

### AGAINST GREENTREE FINANCIAL GROUP, INC.

46.     Plaintiff reaffirms and realleges paragraphs 1 through 7 and 26 through 33 as if fully set forth herein.

47.     That at all times material hereto, Defendant, GREENTREE FINANCIAL GROUP, INC., either itself or through an entity known as BONGIOVANNI & ASSOCIATES prepared and permitted to be used and incorporated into certain public filings, as alleged herein, causing the Plaintiff to be deceived as to the financial condition of DARK DYNAMITE, INC.

48.     Defendant through its manipulating of the market for its shares, using deceptive filings, devaluing shares and otherwise defrauding Plaintiff has caused Plaintiff damages.

49.     Plaintiff has retained the undersigned attorneys and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, ALLEN E. WEINTRAUB, demands a Judgment for damages against Defendant, GREENTREE FINANCIAL GROUP, INC., for an amount in excess of $100,000.00 plus consequential damages, interest, court costs and reasonable attorneys' fees pursuant to applicable Statutes and Rules.

<u>COUNT V - SUIT ON A PROMISSORY NOTE</u>

<u>AGAINST DARK DYNAMITE, INC.</u>

50.     Plaintiff reaffirms and realleges paragraphs 1, 2, 6, and 7 through 17 as if fully set forth herein.

51.     DARK DYNAMITE, INC. has defaulted under the terms of the Note by failing to make any payments, pursuant to the Note, when due.

52.     On May 16, 2003, WEINTRAUB notified DARK DYNAMITE, INC. of its default under the Note.  See attached Exhibit "A".

53.     DARK DYNAMITE, INC. owes WEINTRAUB $472,927.00, plus interest on the Note.

54.     WEINTRAUB has retained the undersigned attorneys to represent him and has agreed to pay them a reasonable fee for their services; and, further, the Note provides for attorney's fees.

55.     All conditions precedent to the bringing of this action have been performed, been waived or have occurred.

WHEREFORE, Plaintiff, ALLEN E. WEINTRAUB, demands Judgment for $472,927.00, plus interest, curt costs, reasonable attorney's fees and such other and further relief as this Court deems just and proper.

<u>COUNT VI - BREACH OF AN EMPLOYMENT AGREEMENT</u>

<u>AGAINST DARK DYNAMITE, INC.</u>

56.     Plaintiff reaffirms and realleges paragraphs 1, 2, 6, and 7 through 17 as if fully set forth herein.

57.     DARK DYNAMITE, INC. owes WEINTRAUB $150,000.00, plus interest, pursuant to the terms of the Employment Agreement and the Addendum to the Employment Agreement.

58.     WEINTRAUB has retained the undersigned attorneys to represent him and has agreed to pay them a reasonable fee for their services; and, further, the Employment Agreement provides for attorney's fees.

59.     All conditions precedent to the bringing of this action have been performed, been waived or have occurred.

WHEREFORE, Plaintiff, ALLEN E. WEINTRAUB, demands Judgment for $150,000.00, plus interest, court costs, reasonable attorney's fees and such other and further relief as this Court deems just and proper.

I understand that I am swearing or affirming under oath the truthfulness of the claims made herein, and that punishment for knowingly making a false statement includes fines and/or imprisonment.

Date: 2/4/05

ALLEN E. WEINTRAUB

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

SWORN TO AND SUBSCRIBED before me this _4/4C_ day of FEBRUARY, 2005, by ALLEN E. WEINTRAUB, who is personally known to me or has produced the following as identification:_____ _N / A_____.



_____
NOTARY PUBLIC

My commission expires:

Andra J. Siler
MY COMMISSION # DD259694 EXPIRES
November 21, 2007
BONDED THRU TROY FAIN INSURANCE INC.

FROMBERG, PERLOW & KORNIK, P.A.
Attorneys for Plaintiff
Suite 100
18901 N.E. 29th Avenue
Aventura, Florida 33180
Telephone: (305) 933-2000

By:_____
MICHAEL PAUL SHIENVOLD
Florida Bar No. 202411

$100,000                                                    Dated: 2/14/03

## PROMISSORY NOTE

FOR VALUE RECEIVED, in performance and satisfaction of a Settlement Agreement and Release, Vector Holdings Corporation, a Nevada corporation ("Maker"), promises to pay to Allen Weintraub, an individual resident of the state of Florida ("Holder"), or order, One Hundred Thousand dollars ($100,000).

1.    Payments. The principal on the obligation represented hereby shall be repaid in one lump sum, one year from the date hereof.

2.    Interest. The obligation shall bear simple interest which shall be at the rate of 7% per annum, payable one year from the date hereof.

3.    Type and Place of Payments. Payments of principal and interest shall be made in lawful money of the United States of America to the above-named Holder at 19495 Biscayne Blvd., Suite 409, Aventura, Florida 33180, or order.

4.    Prepayment. Advance payment or payments may be made on the principal, without penalty or forfeiture. There shall be no penalty for any prepayment.

5.    Default. Upon the occurrence or during the continuance of any one or more of the events hereinafter enumerated, Holder or the holder of this Note may forthwith or at any time thereafter during the continuance of any such event, by notice in writing to the Maker, declare the unpaid balance of the principal and interest on the Note to be immediately due and payable, and the principal and interest shall become and shall be immediately due and payable without presentation, demand, protest, notice of protest, or other notice of dishonor, all of which are hereby expressly waived by Maker, such events being as follows:

(a)    Default in the payment of the principal and interest of this Note or any portion thereof when the same shall become due and payable, whether at maturity as herein expressed, by acceleration, or otherwise, unless cured within five (5) days after notice thereof by Holder or the holder of such Note to Maker.

(b)    Maker shall file a voluntary petition in bankruptcy or a voluntary petition seeking reorganization, or shall file an answer admitting the jurisdiction of the court and any material allegations of an involuntary petition filed pursuant to any act of Congress relating to bankruptcy or to any act purporting to be amendatory thereof, or shall be adjudicated bankrupt, or shall make an assignment for the benefit of creditors, or shall apply for or consent to the appointment of any receiver or trustee for Maker, or of all or any substantial portion of its property, or Maker shall make an assignment to an agent authorized to liquidate any substantial part of its assets; or

(c)    An order shall be entered pursuant to any act of Congress relating to bankruptcy or to any act purporting to be amendatory thereof approving an involuntary petition seeking reorganization of the Maker, or an order of any court shall be entered appointing any receiver or trustee of or for Maker, or any receiver of trustee of all or any substantial portion of the property



EXHIBIT
A

of Maker, or a writ or warrant of attachment or any similar process shall be issued by any court against all or any substantial portion of the property of Maker, and such order approving a petition seeking reorganization or appointing a receiver or trustee is not vacated or stayed, or such writ, warrant of attachment, or similar process is not released or bonded within 60 days after its entry or levy.

6.    Attorneys' Fees.  If this Note is placed with an attorney for collection, or if suit be instituted for collection, or if any other remedy permitted by law is pursued by Holder, because of any default in the terms and conditions herein, then in such event, the undersigned agrees to pay reasonable attorneys' fees, costs, and other expenses incurred by Holder in so doing.

7.    Construction.  This Note shall be governed by and construed in accordance with the laws of the State of Florida.

8.    Conversion into Shares.  Upon written notice to the other party to this Note, the obligation represented by this note may be converted into shares of the common stock of the Maker, the common stock shall be valued at eighty percent (80%) of the closing price of the day prior to written notice for conversion of the Note as set forth herein into shares of the Maker's common stock, such shares shall be delivered within 5 business days of the receipt of the notice of conversion as issued by either party.  Receipt of the shares of common stock of the Maker by the Holder as set forth by this paragraph shall be treated as full and final payment and complete satisfaction of this note, including all principal and interest.  However, failure to deliver these shares shall be an act of default and entitle Holder to the remedies set forth herein under Paragraph 6.  *All Shares of Any will either be rendered or accompanied by a letter of opinion at Vector Corp. And full value must be declined*

Maker: Vector Holdings Corporation

By: _____

N:\Master\Clients\Vector Holdings Corporation\conversion promissory note 2-03.wpd

**ADDENDUM TO**
**EMPLOYMENT AGREEMENT**
**&**
**PROMISSORY NOTE**
**BETWEEEN**
**VICTOR HOLDINGS, CORP, A NEVADA CORPORATION**
**&**
**ALLEN WEINTRAUB**
**&**
**MIAMI VENTURE CAPITAL, INC., A FLORIDA CORPORATION**
**DATED FEBRUARY 14, 2003**

1.     IT IS UNDERSTOOD BY ALL PARTIES, THAT THE PROMISSORY NOTE IS CONSIDERED A NEGOTIATED AMOUNT THAT IS OWED TO MIAMI VENTURE CAPITAL, INC., AND WHEN PAID IS CONSIDERED PAYMENT IN FULL. IN THE CASE OF DEFAULT THEN THE ORGINAL AMOUNT SHALL BE DUE AND PAYABLE, WHICH AS OF THE DATE OF THE AGREEMENT WAS $472,927, PLUS INTEREST AT 18% PLUS A 5% LATE FEE PER MONTH, FROM THE DATE OF THIS AGREEMENT.

2.     ALL PAYMENTS UNDER THE PROMISSORY NOTE WILL BE FIRST APPLIED TO INTEREST AND LATE FEE'S, THEN PRINCIPLE.

3.     THE PROMISSORY NOTE, WHICH IS OWED TO MIAMI VENTURE CAPITAL, HAS BEEN ASSIGNED TO ALLEN WEINTRAUB, ALONG WITH ALL AND ANY LIENS THAT ACCOMPANY THE AMOUNTS OWED, INCLUDING ALL UCC LIENS.

4.     IF A DEFAULT UNDER EITHER AGREEMENT OCCURS, BY VECTOR HOLDINGS, CORP., THEN ALL SUMS UNDER BOTH AGREEMENTS SHALL BECOME DUE AND PAYABLE, WITH INTEREST IN FULL, UPON DEMAND. ANY PAYMENTS MADE WOULD FIRST BE APPLIED TO THE EMPLOYMENT AGREEMENT AND THEN TO THE PROMISSORY NOTE.

5.     IF A DEFAULT OCCURS BY VECTOR, THEN ALLEN WEINTRAUB CAN TERMINATE HIS EMPLOYMENT AGREEMENT, AND ALL AMOUNTS IN FULL WOULD BE DUE AND PAYABLE IN FULL. A DEFAULT WOULD BE, FAILURE TO MAKE ANY PAYMENTS THAT ARE DUE, ON EITHER THE EMPLOYMENT OR PROMISSORY AGREEMENT, ANY NON-PAYMENT OF EXPENSE THAT IS SUBMITTED, ANY ADVERSE LEGAL MATTER THAT WOULD EFFECT PAYMENT.

6.     IT IS UNDERSTOOD BY ALL PARTIES THAT THESE AGREEMENTS HAVE BEEN CONSULTED WITH, SOLOUTIONS CORP., WHO IS OWED $50,000, WHICH IS PAYABLE ONLY AFTER ALL PAYMENTS ARE MADE IN FULL ON BOTH AGREEMENTS.

7.     VECTOR HOLDINGS CORP., FURTHER AGREES TO INDEMINFY AND DEFEND ANY ACTIONS, LAW SUITS, OR INVESTIGATIONS THAT MAY DEVELOP FROM THE TIME THAT ALLEN WEINTRAUB WAS AN OFFICER AND DIRECTOR OF THE COMPANY AND INDEMINFY AND HOLD HARMLESS ALLEN WEINTRAUB FOR ANY MATTER NOW OR IN THE FUTURE. INCLUDING CASE# 02-23048-CIV-Ungaro-Benages SEC VS ALLEN WEINTRAUB. IF ANY ACTION REQUIRES THE HIRING OF ATTORNEY, VECTOR SHALL PAY ALL EXPENSES FOR THE ATTORNEY AND ANY

**EXHIBIT**

*B*

FEE'S ASSOCIATED WITH THE HIRING OF THE ATTORNEY, INCLUDING CASE # 02-23048-CIV-Ungaro-Benages SEC VS. ALLEN WEINTRAUB OR ANY OTHER MATTER IN THE FUTURE. IF ANY LAW SUIT OR ACTION, RESULTS IN A JUDGEMENT, FINE, DISGORGEMENT, OR ANY OTHER PENALTY, WHETHER BY CONSENT OR TRIAL, VECTOR HOLDINGS CORP., WILL BE RESPONSIBLE, TO PAY SUCH JUDGEMENT, FINE, DISGORGEMENT, OR ANY OTHER PENALTY, INCLUDING THE OUTCOME OF CASE#02-23048-CIV-Ungaro-Benages SEC VS. ALLEN WEINTRAUB OR ANY OTHER ACTION THAT MAY DEVELOP IN THE FUTURE.

8.      THIS ADDENDUM SHALL BE GOVERENED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA, AND SHALL SUPERCEDE ANY OTHER JURISTRICTION IN THE CASE OF DEFAULT. VENUE SHALL BE ANY COURT, FEDERAL OR STATE IN THE COUNTY OF MIAMI-DADE, FLORIDA.

9.      IN THE EVENT THAT SUIT IS FILED BY ALLEN WEINTRAUB FOR *DEFAULT OF PAYMENT*, AGAINST, **VECTOR HOLDINGS CORP., THEN VECTOR** SHALL BE RESPONSIBLE TO PAY ALL ATTORNEY FEE'S, FOR ALLEN WEINTRAUB REGARDLESS OF THE OUTCOME.

10.     IF ANY ITEM WITHIN THE ADDENDUM CONFLICTS WITH ANY OF THE AGREEMENT'S, THEN THE ADDENDUM ITEM SHALL GOVERN AND CONTROL.

AGREED BY:

DATED: 2/14/2003

ALLEN WEINTRAUB, PRESIDENT
VECTOR HOLDINGS, CORP.
A NEVADA CORPORATION


AGREED BY:

DATED: 2/14/2003

ALLEN WEINTRAUB, PRESIDENT
MIAMI VENTURE CAPITAL, INC
A FLORIDA CORPORATION


AGREED BY:

DATED: 2/14/2003

ALLEN WEINTRAUB
INDIVIDUALLY

Employment Agreement

AGREEMENT made this 25th day of February, 2003, between Vector Holdings Corporation, a Nevada corporation whose corporate headquarters are located at 194 Biscayne Blvd, Suite 409, Aventura, Florida (herein after referred to as "Company"), and Allen Wientraub, an individual whose address is P.O. Box 800303, Aventura Florida 33280(hereinafter referred to as "Employee").

Employee has been, and desires to continue to be, employed by Company and Company desires to employ Employee in a capacity in which Employee would provide substantial assistance with the preparation of the Company disclosure documents to be filed with Securities and Exchange Commission, provide the necessary historical information with respect to the Company such that the Company may continue forward with its future plans of operation, provide substantial assistance with respect to winding down and concluding the affairs of the Company's subsidiary ( Best Foods) and other consulting services that may arise during the course of this agreement. Now, therefore, it is agreed:

1.    Definitions:  As used in this Agreement:  (a) "Company" means Vector Holdings Corporation, its successors and assigns, and any of its present or future subsidiaries, or organizations controlled by, controlling, or under common control with it. (b) "Confidential Information" means any and all information disclosed or made available to Employee or known by Employee as a direct or indirect consequence of or through his employment by Company and not generally known in the industry in which Company is or may become engaged, or any information related to Company's products, processes, or services, including, but not limited to, information relating to research, development, Plans and Inventions (as defined below), manufacture, purchasing, accounting, engineering, marketing, merchandising, or selling.  (c) "Plans and Inventions" means discoveries, concepts, and ideas, whether patentable or not, relating to any present or prospective activities of Company, including, but not limited to, processes, methods, formulae, techniques, devices, and any improvements to the foregoing.  (d) "Company Monthly Base Pay" means Employee's last monthly remuneration, prior to termination of his employment with Company, before federal, state, and local taxes and other withholding, but exclusive of extra compensation, such as that attributable to bonuses, overtime, or employee retirement or pension benefits.  (e) "Conflicting Organization" means any person or organization engaged, directly or indirectly, in the research, development, production, marketing or selling of a Conflicting Product.   (f) "Conflicting Product" means any product, process, or service of any person or organization, other than Company, in existence or under development, which resembles, competes with or is marketed or offered for sale or lease to the same or similar potential customers as a product, process, or service which is the subject of research, development, production, marketing or selling activities of Company. (g) "New Monthly Base Pay" means Employee's monthly remuneration with a subsequent employer, computed as described in Subparagraph (d) of this Paragraph 1.

2.    Duties:  The Employee shall be employed by Company and shall faithfully and to the best of his ability perform such duties and render such services as may be directed by Company,



EXHIBIT

C

including, but not limited to, the following: the preparation of the Company disclosure documents to be filed with Securities and Exchange Commission, provide the necessary historical information with respect to the Company such that the Company may continue forward with its future plans of operation, provide substantial assistance with respect to winding down and concluding the affairs of the Company's subsidiary ( Best Foods) and other consulting services that may arise during the course of this agreement. It is understood that Employee's compensation is based upon Employee's information and knowledge with value respect the Company's historical record and that such information would be very difficult if ntc impossible to obtain with out the substantial assistance of Employee. Accordingly, the compensation is not necessarily based upon the amount of expended by Employee.

3.      Compensation, Term, and Termination: As compensation for his services, Employee shall receive the following compensation: $150,000 in cash or stock or combination of both. The Company intends to issue Employee shares of its common stock pursuant to a valid Form S-8 registration statement provided such registration is available. Employee understands that at no time will be be entitled to receive more than a total of 9.9% of the Company's issued and outstanding shares and payment shall be made on a quarterly basis with the first payment due 90 days from the date of closing upon the Stock Acquisition Agreement attached here to as Exhibit *If Employee is deemed Full Compensation will be made at that* This employment agreement shall continue for one ( 1 ) year from the effective date of this agreement. At all times, this employment contract is subject to the right of Company to terminate the employment on two weeks notice. Company shall have the right to terminate such employment at any time in the event of default or nonperformance by Employee of any of the provisions of this Agreement. In the event of notice given by either party, Employee shall continue to work for Company for the full notice period, if so requested by Company. Company reserves the right at any time to pay to Employee his full salary for any required notice period and to terminate his employment immediately or at any time during such notice period. *If Compensation In Stock, then Payment Shall be at a 10% Discount*

4.      Benefits, Bonuses and Expenses: (1) Company may provide for Employee benefits as it, in the sole discretion of Company's Board of Directors, shall deem appropriate. Such benefits shall be provided to Employee in such a manner as shall be determined by the Board of Directors. (2) Company may pay to Employee bonuses as it, in the sole discretion of Company's Board of Directors, shall deem appropriate. Employee acknowledges that Company makes no assurance that a bonus, if any, will be awarded to Employee for any services performed during any term of this employment contract. (3) Additionally, Company may reimburse Employee for expenses as it, in the sole discretion of Company's Board of Directors, shall deem appropriate. Such expense reimbursements shall be paid to Employee as ordered by the Board of Directors. *and Full Value may be Paid*

5.      Disclosure of Confidential Information: (a) *Confidentiality*. Except as required in the performance of his duties to Company, Employee shall treat as confidential and shall not, directly or indirectly, use, disseminate, disclose, publish, or otherwise make available any Confidential Information or any portion thereof.   (b) *Return of confidential information*. Upon termination of his employment with Company, all documents, records, notebooks, and similar repositories containing Confidential Information, including copies thereof, then in Employee's possession, whether prepared by him or others, shall be promptly returned to Company. If at any

2

time after the termination of employment Employee determines that he has any Confidential Information in his possession or control, he shall immediately return to Company all such Confidential Information, including all copies and portions thereof. (c) *Waiver*. Unless expressly set forth in detail in Exhibit A, Employee waives any and all rights to claim that any discoveries, concepts, ideas, structures, processes, methods, formulae, or techniques have been made, acquired, conceived, or reduced to practice prior to his employment by Company and not subject to the terms and conditions of this Agreement.

6.   Binding Effect:  This Agreement shall be binding upon the parties hereto and upon their respective executors, administrators, legal representatives, successors, and assigns.

7.   Enforcement:  The formation, effect, performance and construction of this Agreement shall be governed by the laws of the State of Utah of the United States of America.

8.   Arbitration:  Any dispute or controversy arising from or relating to this Agreement shall be decided by arbitration in the City of Salt Lake City, by the American Arbitration Association, by a panel of three arbitrators mutually acceptable to Employee and Company, and in accordance with the procedural rules and regulations of that association. At the request of either Company or Employee, arbitration proceedings will be conducted in secrecy; in such case, all documents, testimony, and records shall be received, heard and maintained by the arbitrators in secrecy, available for inspection only by Company, Employee and their respective attorneys and experts who shall agree, in advance and in writing, to receive all such information confidentially and to maintain such information in secrecy until such information shall become generally known or until such time as such information becomes known by reason of judicial appeal from or enforcement of the decision of the arbitration.

9.   Entire Agreement and Waiver of Prior Rights:  This Agreement and any attachments hereto constitute the entire agreement and understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, whether oral or written, including, but not limited to, any prior agreement for compensation, in which compensation has not been paid. By executing this agreement, Employee acknowledges that he is waiving all rights granted by prior agreements. No modification or claimed waiver of any of the provisions hereof shall be valid unless in writing and signed by the duly authorized representative against whom such modification or waiver is sought to be enforced.

10.   Other Rights:  Nothing contained in this Agreement shall be construed as conferring by implication, estoppel, or otherwise upon either party any license or other right except the licenses and rights expressly granted hereunder to that party.

11.    Acceptance: Each party hereby accepts the licenses and rights granted to it by a party under this Agreement subject to all of the terms and conditions of this Agreement.   In witness whereof, the parties have executed this Agreement on the day and year first above written.

Employee:

_____

Individual

Company

_____

Allen Wientraub, President

Allen E. Weintraub
P.O. BOX 800303
Aventura, Fl. 33280
786-303-3244
Fax 305-936-1619

May 16, 2003

Sent via fax
888-290-4987 & 801-575-8092

Vector Holdings, Corp
1959 S Power Road, 103-158
Mesa, Az 85206

Attention: Gino Carlucci, President

Gino,

This letter is to inform you that you are in default of the Employment
Agreement, between myself and the company (Vector), dated February 14,
2003. Specifically paragraph 3 of the Employment Agreement. This default
then triggers a default of the Promissory Note, also dated February 14, 2003
as per the addendum to the agreements. A default under either agreement
triggers all remedies under the:
*ADDENDUM TO THE EMPLOYMENT AGREEMENT &
PROMISSORY NOTE BETWEEN VECTOR HOLDINGS
CORPORATION & ALLEN WEINTRAUB & MIAMI VENTURE
CAPITAL, INC.*
Also executed February 14, 2003. Therefore, as per the addendum all
payments, under both agreement are due and payable in full upon demand as
it relates to both agreements. Demand is herby made for payment in full
under both agreements. We will be seeking enforcement of all terms and
sections of the Addendum.

Sincerely,

Allen Weintraub

EXHIBIT
A

Y00000007228                  PAGE
                          STATE OF FLORIDA
UNIFORM COMMERCIAL CODE   FINANCING STATEMENT          FORM UCC-1 (REV. 1993)
          This Financing Statement is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 1. Debtor (Last Name First if an Individual) | | 1a. Date of Birth or FEI# |
| Vector Holdings Corporation | | 65-1021346 |

| 1b. Mailing Address | 1c. City, State | 1d. Zip Code |
| 120 NE 179th Street | Miami, Florida | 33179 |

| 2. Additional Debtor or Trade Name (Last Name First if an Individual) | | 2a. Date of Birth or FEI# |

| 2b. Mailing Address | 2c. City, State | 2d. Zip Code |

| 3. Secured Party (Last Name First if an Individual) | | |
| Miami Venture Capital, Inc. | | |

| 3a. Mailing Address | 3b. City, State | 3c. Zip Code |
| P O Box 800303 | Aventura, Florida | 33280 |

| 4. Assignee of Secured Party (Last Name First if an Individual) | | |

| 4a. Mailing Address | 4b. City, State | 4c. Zip Code |

5. This Financing Statement covers the following types or items of property [Include description of real property on which located and owner of record when required. If more space is required, attach additional sheet(s)].

All common stock of Debtor, whether issued or not, all common stock of any company in which Debtor has any ownership interest, all inventory, goods, raw materials and work in progress, chattel paper, accounts, contract rights, instruments, chattel paper and obligations, equipment, fixtures, machinery, furnishings and supplies and general intangibles and all other personal property, including, all after acquired property and all after acquired stock of companies in which Debtor squires an ownership interest.

6. Check only if Applicable: ☒ Products of collateral are also covered. ☐ Proceeds of collateral are also covered. ☐ Debtor is transmitting utility.

7. Check appropriate box: ☒ All documentary stamp taxes due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
   (One box must be marked) ☐ Florida Documentary Stamp Tax is not required.

8. In accordance with s. 679.402(2), F.S., this statement is filed without the Debtor's signature to perfect a security interest in collateral:
   ☐ already subject to a security interest in another jurisdiction when it was brought into this state or debtor's location changed to this state.
   ☐ which is proceeds of the original collateral described above in which a security interest was perfected.
   ☐ as to which the filing has lapsed. Date filed _____ and previous UCC-1 file number _____
   ☐ acquired after a change of name, identity, or corporate structure of the debtor.

9. Number of additional sheets presented: _____

This Space for Use of Filing Officer

10. Signature(s) of Debtor(s)

Karl J. Schumer, Vice President

11. Signature(s) of Secured Party or if Assigned, by Assignee(s)

Allen E. Weintraub, President

FILED

SEP 15, 2000 03:56 PM

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

200000213013  ᴰᴹ

| 12. Return Copy to: | |
| Name | Karl J. Schumer, Esq. |
| Address | Steven Silverman, P. A. |
| Address | 9400 S. Dadeland Blvd. |
| | Suite 600 |
| City, State, Zip | Miami, Florida  33156 |

Y00000007228

FILING OFFICER COPY     STANDARD FORM - FORM UCC-1     Approved by Secretary of State, State of Florida

**EXHIBIT**

tabbies°    E

Division of Corporations                                                                Page 1 o

## Florida Department of State
Division of Corporations
Public Access System
Katherine Harris, Secretary of State

**Electronic Filing Cover Sheet**

Note: Please print this page and use it as a cover sheet. Type the fax audit number (shown below) on the top and bottom of all pages of the document.

(((Y00000007228 9)))

Note: DO NOT hit the REFRESH/RELOAD button on your browser from this page. Doing so will generate another cover sheet.

```
To:
    Division of Corporations
    Fax Number      : (850)922-3700

From:
    Account Name    : COHEN, CHASE, & HOFFMAN, P.A.
    Contact Name    : MARY W KURLANSIK
    Account Number  : 102450002676
    Phone           : (305)670-0201
    Fax Number      : (305)670-6152
```

| Secured(s)       | 1       |
|------------------|---------|
| Debtor(s)        | 1       |
| Page Count       | 01      |
| Estimated Charge | $25.00  |

Electronic Filing Menu          UCC Menu          Public Access Help

https://ccfss1.dos.state.fl.us/scripts/ucc1covr.exe          9/15/00

**RECEIVED**

**MAY 2 3 2003**

ARIZONA CORP. COMMISSION
CORPORATIONS DIVISION

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
MIAMI VENTURE CAPITAL, INC. 786-303-3244

B. SEND ACKNOWLEDGMENT TO  (Name and Address)

MIAMI VENTURE CAPITAL, INC
P.O. BOX 800303
AVENTURA FL 33280

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | VECTOR HOLDINGS CORP   A/K/A   NCI Holdng | | | | |
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | N/A | N/A | N/A | | N/A |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1959 SOUTH POWER RD. BLDG 103 SUITE 158 | MESA | AZ | 85206 | USA |

| 1d. TAX ID # : SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 65-1021346 | | COPORATION | N/A | N/A ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | N/A | | | | |
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | N/A | N/A | N/A | | N/A |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

| 2d. TAX ID # : SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| N/A | | N/A | N/A | N/A ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | MIAMI VENTURE CAPITAL, INC | | | | |
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | N/A | N/A | N/A | | N/A |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 800303 | AVENTURA | FL | 33280 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL COMMON STOCK OF DEBTOR, WHETHER ISSUED OR NOT, ALL COMMON
STOCK OF ANY COMPANY IN WHICH THE DEBTOR HAS AN OWNERSHIP INTERES
ALL INVENTORY, GOODAS, raw mTERIALS AND WORK IN PROGRESS,
CHATTEL PAPER, ACCOUNTS, CONTRACT RIGHTS, INSTRUMENTS, CHATTEL
PAPER AND OBLIGATIONS, EQUIPMENT, FIXTURES, MACHINERY,
FURNISHINGS AND SUPPLIES AND GENERAL INTANGABLES AND ALL
OTHER PERSONAL PROPERTY, INCLUDING ALL AFTER ACQUIRED PROPERTY
AND ALL AFTER ACQUIRED STOCK OF COMPANIES IN WHICH DEBTOR
ACQUIRES AN OWNERSHIP INTEREST.

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional]   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEME

**EXHIBIT**

F



Division Of Corporations

# Acknowledgement of Filing

File Number:217840200333          Record Date:05-23-2003 10:10          Type:UCC
Old File Number:N/A               Lapse Date:05-23-2008 10:10           Status:ACTIVE

**Filer:**

MIAMI VENTURE CAPITAL, INC.
P.O. BOX 800303
AVENTURA,FL 33280 USA

**Collateral Description:**
Action: ADD
Description:
ALL COMMON STOCK OF DEBTOR, WHETHER ISSUED OR NOT, ALL COMMON STOCK OF ANY COMPANY IN WHICH
THE DEBTOR HAS AN OWNERSHIP INTERES ALL INVENTORY,GOODAS, RAW MATERIALS AND WORX IN
PROGRESS, CHATTEL PAPER, ACCOUNTS, CONTRACT RIGHTS, INSTRUMENTS, CHATTEL P

**Debtor:**
VECTOR HOLDINGS CORP                                  Jurisdiction: N/A
1959 SOUTH POWER RD. BLDG 103 SUITE 158               Organization ID: N/A
MESA,AZ 75206 USA                                     Organization Type: CORP

**Secured Party:**
MIAMI VENTURE CAPITAL, INC.
P.O. BOX 800303
AVENTURA,FL 33280 USA

**Transaction Detail:**
Form Type:UCC 1 FILING STATEMENT                      Transaction Cost: $10.00
Effective Date:05-23-2003 10:10                       Receipt Number:875109
Submitter Ref:NONE                                    Alt Designation:NONE

**Additional Description:**

FILING APPROVED - 3
THE DATA LISTED ABOVE IS A ''NON-CERTIFIED' RECORD.PLEASE TAKE THE TIME TO REVIEW ALL OF THE
INFORMATION.IF YOU FIND ANY DISCREPANCIES YOU MUST CONTACT THE DIVISION, AT NO COST, WITHIN
30 DAYS OF RECEIVING THIS ACKNOWLEDGEMENT.

**EXHIBIT**

G

tabbies





.: QUOTE   .: CHART   .: COMPANY INFORMATION   .: NEWS   .: SEC FILINGS   .: FINANCIAL REPORTS

Home >>   Quotes & Data >>   SEC Filings >>   VCRH

VCRH -- Vector Holdings Corp.
Com ($0.001)(New)

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### SCHEDULE 14C INFORMATION

### CURRENT REPORT

### PURSUANT TO SECTION 14(C)
of the
### SECURITIES EXCHANGE ACT OF 1934

Date of Report May 27, 2003

## Vector Holdings Corporation.
(Exact name of registrant as specified in its charter)

**Nevada**
(State or other jurisdiction of incorporation or organization)

| 92240P309 | 65-1021346 |
|---|---|
| (CUSIP Number) | (IRS Employer Identification Number) |

c/o Gino Carlucci, President
1959 S. Power Rd., Bldg 103, Ste 158, Mesa, Arizona 85206

(Address of principal executive offices)

(602) 762-8111
(Registrant's telephone number, including area code)

We Are Not Asking You For a Proxy
AND
You Are Requested Not to Send Us A Proxy



EXHIBIT
H

Check the appropriate box:

[ ] Preliminary Information Statement

[ ] Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2)

[X ]Definitive Information Statement

1

**Vector Holdings Corporation.**

(Name of Registrant as Specified in its Charter)

**Payment of Filing Fee (Check the appropriate box):**

[ X ] No fee required.

[ ] Fee computed on table below per Exchange Act Rules 14(c)-5(g) and 0-11.

1) Title of each class of securities to which transaction applies:

2) Aggregate number of securities to which transaction applies:

3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11: 0

4) Proposed maximum aggregate value of transaction: 0

5) Total fee paid: $125.00

[ ] Fee paid previously with preliminary materials.

[ ] Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing. 1) Amount Previously Paid:

2) Form, Schedule or Registration No.:

3) Filing Party:

4) Date Filed

2

Vector Holdings Corporation.

1959 S. Power Rd, Bld 103 #158

Mesa, AZ 85206

Notice of Action by Written Consent

of a Majority of the Outstanding Common Stock taken on May 8th, 2003

**To the Stockholders of Vector Holdings Corporation.:**

This Information Statement is furnished to the stockholders of Vector Holdings, Inc., a Nevada corporation (Vector), in connection with the following corporate action approved by the written consent by the holder of a majority of the outstanding shares of common stock of Vector:

/print_filings.jsp?uri=%2F...

o Amendment to the articles of incorporation changing the name from Vector Holdings Corporation to NCI Holdings, Inc.

o Amendment to the article of incorporation increasing the number of authorized $0.001 par value shares of the Common Stock from 3,000,000 to 600,000,000. The number of preferred shares authorized will remain at 5,000,000.

Vector is not asking you for a proxy and you are requested not to send a proxy. Your vote or consent is not requested or required to approve the above amendments to Vector's article of incorporation This Information Statement is provided solely for your information.

Only stockholders of record at the close of business on May 8, 2003 shall be given Notice of the Action by Written Consent. Vector is not soliciting proxies.

By Order of the Board of Directors

/s/ Gino Carlucci
-----------------------------------
     Gino Carlucci, President

3

This information statement is being furnished to all holders of the common stock of Vector in connection with the Action by Written Consent to amend Vector's Articles of Incorporation.

ITEM 1.

## INFORMATION STATEMENT

This information statement is being furnished to all holders of the common stock of Vector Holdings Corporation, a Nevada Corporation ("Vector"), in connection with resolutions of the Board of Directors and the written shareholder consent of a holder of in excess of 50% of the common stock of Vector providing for an amendment to Vector's Articles of Incorporation:

o Changing the name of Vector to "NCI Holdings, Inc.,"
o Increasing Vector's authorized common shares from 3,000,000 shares of $0.001 par value common stock to 600,000,000 shares of $0.001 par value common stock.

## NAME CHANGE

The Board of Directors believes that it is in the best interest of Vector to change its name to NCI Holdings, Inc. to reflect the fact that it is no longer operating as food distribution company and to provide Vector with a new image in anticipation of acquiring new operations.

## INCREASE THE AUTHORIZED CAPITAL STOCK OF THE COMPANY

Vector's Articles of Incorporation, as currently in effect, authorizes Vector to issue up to 3,000,000 shares of common stock, par value $0.001 per share, and 5,000,000 shares of preferred stock, par value $0.10 per share. The Board of Directors and the Majority Shareholders have approved an increase in the number of authorized shares of the common stock of Vector. Upon the filing of the Amended Articles of Incorporation, Vector will be authorized to issue 600,000,000 shares of common stock, $0.001 par value per share. The number of authorized preferred shares will remain the same at 5,000,000 shares with a $0.10 par value per share. The Board of Directors believes that it is in Vector's and Vector's stockholders' best interests to increase the availability of additional authorized but unissued capital stock to provide Vector with the flexibility to issue equity for other proper corporate purposes which may be identified in the future. Such future activities may include, without limitation, raising equity capital, adopting Employee Stock Plans or making acquisitions through the use of stock. The Board of Directors has no immediate , understandings, agreements or commitments to issue additional shares of stock for any purposes.

The Board of Directors believes that the increase in authorized capital will make a sufficient number of shares available, should Vector decide to use its shares for one or more of such previously mentioned purposes or otherwise. Vector reserves the right to seek a further increases in authorized shares from time to time in the future as considered appropriate by the Board of Directors. The increased capital will provide the Board of Directors with the ability to issue additional shares of stock without further vote of the stockholders of Vector, except as provided under Nevada corporate law or under the rules of any national securities exchange on which shares of stock of Vector are then listed. Under Vector's Articles, the Vector stockholders do not have preemptive rights to subscribe to additional securities which may be issued by Vector, which means that current stockholders do not have a prior right to purchase any new issue of capital stock of Vector in order to maintain their proportionate ownership of Vector's stock. In addition, if the Board of Directors elects to issue additional shares of stock, such issuance could have a dilutive effect on the earnings per share, voting power and shareholdings of current stockholders. In addition to the corporate purposes discussed above, the authorization of additional capital, under certain

4

circumstances, may have an anti-takeover effect, although this is not the intent of the Board of Directors. For example, it may be possible for the Board of Directors to delay or impede a takeover or transfer of control of Vector by causing such additional authorized shares to be issued to holders who might side with the Board in opposing a takeover bid that the Board of Directors determines is not in the best interests of Vector and our stockholders. The increased authorized capital therefore may have the effect of discouraging unsolicited takeover attempts. By potentially discouraging initiation of any such unsolicited takeover attempts, the increased capital may limit the opportunity for Vector stockholders to dispose of their shares at the higher price generally available in takeover attempts or that may be available under a merger proposal. The increased authorized capital may have the effect of permitting Vector's current management, including the current Board of Directors, to retain its position, and place it in a better position to resist changes that stockholders may wish to make if they are dissatisfied with the conduct of Vector's business. However, the Board of Directors is not aware of any attempt to take control of Vector and the Board of Directors did not approve the increase in Vector's authorized capital with the intent that it be utilized as a type of anti-takeover device.

The Board of Directors and a person owning the majority of the outstanding voting securities of Vector have unanimously adopted, ratified and approved resolutions to effect the name change and

recapitalization. No other votes are required or necessary. See the caption "Vote Required for Approval," below. The Amendment was filed and will become effective on June 17, 2003.

New stock certificates taking into account the Name Change may be obtained from Standard Registrar & Transfer Company, Inc., whose address and telephone number are as follows:

12528 South 1840 East
Draper, Utah 84020
Telephone (801) 571-8844

A transfer fee of $20.00 is required per certificate to effect such a transfer. Stock certificates being transferred into the present owner's name need not be signed or guaranteed. Those being transferred to someone other than the present record owner must be signed and bear a "Medallion Member" bank or broker/dealer signature guarantee.

The Form 10-QSB filed by Vector with the Securities and Exchange Commission may be viewed on the Securities and Exchange Commission's web site at www.sec.gov in the Edgar Archives. Vector is presently "current" in the filing of all reports required to be filed by it. See the caption "Additional Information," below.

## DISSENTER'S RIGHTS OF APPRAISAL

The Nevada Revised Statutes ("the Nevada Law") do not provide for dissenter's rights of appraisal in connection with the Name Change or Recapitalization.

## VOTING SECURITIES AND PRINCIPAL HOLDERS THEREOF

The Board of Directors has fixed the close of business on May 8, 2003 as the record date for the determination of the common shareholders entitled to notice of proposed action by written consent.

At the record date, Vector had outstanding 321,900 shares of $0.001 par value common stock. Richard D. Surber, by virtue of his position as President of Diversified Holdings X, Inc., holds a controlling interest of 200,257 shares of the $0.001 par value common stock of Vector as of the record date, representing more than a majority of Vector's outstanding common stock. Richard Surber has consented to the action required to effect the proposed amendments to Vector's Articles of Incorporation. This consent will be sufficient, without any further action, to provide the necessary stockholder approval of the action.

Richard Surber personally owns no shares of Vector's stock as of the record date.

## SECURITY OWNERSHIP OF EXECUTIVE OFFICERS, DIRECTORS AND FIVE PERCENT STOCKHOLDERS

The following table sets forth information about the beneficial ownership of Vector's Common Stock, (1,254,857 shares of preferred stock are outstanding) as of May 8, 2003 by (i) each person who is known by Vector to own beneficially more

5

than five percent (5%) of the outstanding shares of Common Stock; (ii) each of Vector's named Executive Officers and Directors; and (iii) all Directors and Executive Officers as a group:

| Title of Class | Name and Address of Beneficial Ownership | Amount and Nature Beneficial Owners |
|---|---|---|
| Common Stock | Gino Carlucci<br>268 W. 400 S., Suite 300<br>Salt Lake City, Utah 84101 | 0 |
| Common Stock | Diversified Holdings X, Inc.<br>268 W. 400 S. Suite 300<br>Salt Lake City, Utah 84101 | 200,2571 |
| Common Stock | Dennis Thompson.<br>#10 Dairy Rd<br>Poca, WV 25159 | 0 |
| Common Stock | All Executive Officers and Directors as a Group | 0 |

As of May 8, 2003, Vector had 321,900 shares of its common voting stock issued and outstanding.

## VOTE REQUIRED FOR APPROVAL

Section 78.385 of the Nevada Revised Statutes provides an outline of the scope of the amendments of the Articles of Incorporation allowed a Nevada Corporation. This includes the amendments discussed herein. The procedure and requirements to effect an amendment to the Articles of Incorporation of a Nevada corporation are set forth in Section 78.390. Section 78.390 provides that proposed amendments must first be adopted by the Board of Directors and then submitted to shareholders for their consideration at an annual or special meeting and must be approved by a majority of the outstanding voting securities.

Section 78.320 of the Nevada Revised Statutes provides that any action required to be taken at a special or annual meeting of the stockholders of a Nevada corporation may be taken by written consent, in lieu of a meeting, if the consent is signed by stockholders owning at least a majority of the voting power.

The Board of Directors of Vector and a person owning and having voting power in excess of 50% of the outstanding voting securities of Vector have adopted, ratified and approved the name change and change in the authorized shares of Vector.(see the heading "Voting Securities and Principal Holders Thereof" above). No further votes are required or necessary to effect the proposed amendment.

The securities that would have been entitled to vote if a meeting was required to be held to amend Vector's Articles of Incorporation consist of issued and outstanding shares of Vector's $0.001 par value common voting stock outstanding on May 8, 2003, the record date for determining shareholders who would have been entitled to notice of and to vote on the proposed amendment to Vector's Articles of Incorporation.

## ITEM 2.

## STATEMENT THAT PROXIES ARE NOT SOLICITED --------

I Richard D. Surber, by virtue of his position as President of Diversified Holdings X, Inc. (DHX) has voting power over the 200,257 shares owned by DHX. DHX is also the holder of 1,254,857 Preferred shares or 100% of the total issued and r outstanding shares of preferred stock. Mr. Surber personally owns no shares of Vector's common stock.

6

---

## WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY

ITEM 3.

### INTEREST OF CERTAIN PERSONS IN MATTERS TO BE ACTED UPON

No director, executive officer, nominee for election as a director, associate of any director, executive officer or nominee or any other person has any substantial interest, direct or indirect, by security holdings or otherwise, in the proposed amendment to Vector's Articles of Incorporation or in any action covered by the related resolutions adopted by the Board of Directors, which is not shared by all other stockholders.

### ADDITIONAL INFORMATION

Additional information concerning Vector Holdings Corporation including its Form 10-SB initial registration statement and quarterly reports on Form 10-QSB for the past two quarters, which have been filed with the Securities and Exchange Commission, may be accessed through the EDGAR archives, at www.sec.gov.

Dated: May 27, 2003

### By Order of the Board of Directors

/s/ Gino Carlucci
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Gino Carlucci, President

7

---

Exhibit "A"

## CERTIFICATE OF AMENDMENT
## TO THE
## ARTICLES OF INCORPORATION OF
### Vector Holdings Corporation.

Pursuant to Section 78.320 of the Nevada Revised Statutes, the undersigned persons, desiring to amend the Articles of Incorporation of Vector Holdings Corporation., under the laws of the State of Nevada, do hereby sign, verify, and deliver to the Office of the Secretary of State of the State of Nevada this Amendment to the Articles of Incorporation for the above-named company (hereinafter referred to as the "Corporation"):

Pursuant to the provisions of Section 78.320, the amendment contained herein was duly approved and adopted by a majority of shareholders and by the board of directors of the Corporation.

FIRST: The Articles of Incorporation of the Corporation were first filed and approved by the Office of the Secretary of State of the State of Nevada on March 21, 1995

SECOND: The following amendments increasing the authorized common stock from 3,000,000 to 600,000,000 shares and changing the Corporation's name were adopted by 200,257 shares, or 62.2%, of the 321,900 issued and outstanding shares of common stock entitled to approve such amendments.

THIRD: Article I of the Articles of Incorporation of the Corporation is amended and stated in its entirety to read as follows:

"FIRST. The Name of the Company is NCI Holdings, Inc.."

FOURTH: Article IV of the Articles of Incorporation of the Corporation is amended and stated in its entirety to read as follows:

"FOURTH. The stock of the corporation is divided into two classes: (1) common stock in the amount of Six Hundred Million (600,000,000) having par value of $0.001 each, and (2) preferred stock in the amount of Five Million (5,000,000) shares having par value of $0.10 each. The Board of Directors shall have the authority, by resolution or resolutions, to divide the preferred stock into more than one class of stock or more than one series of any class, to establish and fix the distinguishing designation of each such series and the number of shares thereof (which number, by like action of the Board of Directors, from time to time thereafter, may be increased, except when otherwise provided by the Board of Directors in creating such series, or may be decreased, but not below the number of shares thereof then outstanding) and, within the limitations of applicable law of the State of Nevada or as otherwise set forth in this Article, to fix and determine the relative voting powers, designations, preferences, limitations, restrictions and relative rights of the various classes or stock or series thereof and the qualifications, limitations or restrictions such rights of each series so established prior to the issuance thereof. There shall be no cumulative voting by shareholders."

DATED this 21 day of May 2003.

/s/ Gino Carlucci

Gino Carlucci, President, and Director

8

End of Filing

Powered By

© 2003 | EDGAR Online, Inc.

| Subj: | vector |
|---|---|
| Date: | 06/06/2003 8:44:26 AM Eastern Daylight Time |
| From: | OPM FL |
| To: | HudConsult |
| CC: | Solutionscorp, Kischumer |

RICHARD IT SEEMS THAT YOU ARE REFILING FILINGS AND ALTERING AND MISREPRESENTING,
PLEASE EXPLAIN. THIS IS A VERY SERIOUS ISSUE OF FRAUD ON A CREDITOR WHICH HAPPENS TO
ME THE CREDITOR.

your revised 10q/a

Effective as of October 7, 2002, the Company forfeited the assets of The Potato Sack, a restaurant operation it
managed located in the Aventura Mall, Aventura, Florida, to Miami Venture Capital, Inc. (MVC) a lender
controlled by the then president of the Company, Allen Weintraub. *MVC agreed to forgive all indebtedness
owed by the Company* arising from the purchase and operation of the Potato Sack. In return for the
forgiveness of that debt to MVC, and to avoid litigation, the Company turned over the assets of The Potato
Sack, including inventory and other corporate owned assets of the Company, including furniture, restaurant
supplies and equipment located in The Potato Sack to MVC.

my 10q that i filed

Effective as of October 7, 2002, the Company forfeited the assets of the Potato Sack restaurant operation to a
secured lender, a related entity. *In return for the forgiveness of certain debt to such secured lender, a
related entity,* and to avoid litigation, the Company turned over the assets of the Potato Sack, including
inventory, security deposits, a lease to a related entity and other corporate owned assets of the Company,
including furniture, office supplies and equipment, to the secured lender. The Company entered into a separate
lease agreement on a monthly basis until alternative facilities can be located.



EXHIBIT

_____/_____

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS
ALLEN E. WEINTRAUB

## DEFENDANTS
DARK DYNAMITE, INC. f/k/a NCI HOLDINGS, INC. f/k/a VECTOR HOLDINGS CORPORATION, a Nevada corporation, JARED D. GOLD, RICHARD SURBER, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Michael Paul Shienvold, Esq.
Fromberg, Perlow & Kornik, P.A.

ATTORNEYS (IF KNOWN)
05-0

(d) CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION  (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

1: 05 CV 20384 Lenard -
Simonton

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)    AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  **PERSONAL INJURY** | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  ☐ 362 Personal Injury — | B☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability  Med Malpractice | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  ☐ 365 Personal Injury | B☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander  Product Liability | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers  ☐ 368 Asbestos Personal | B☐ 650 Airline Regs | | Corrupt Organizations |
| B☐ 152 Recovery of Defaulted | Liability  Injury Product Liability | B☐ 660 Occupational | ☐ 820 Copyrights | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | Safety/Health | ☐ 830 Patent | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product  **PERSONAL PROPERTY** | B☐ 690 Other | ☐ 840 Trademark | Exchange |
| B☐ 153 Recovery of Overpayment | Liability  ☐ 370 Other Fraud | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 371 Truth in Lending | **A LABOR** | **B SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability  Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury  ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Product Liability | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| | **PRISONER PETITIONS** | & Disclosure Act | | Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 220 Foreclosure | ☐ 442 Employment  B☐ 510 Motions to Vacate | | | Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/  Sentence | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | Accommodations  **HABEAS CORPUS:** | | or Defendant) | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare  B☐ 530 General | A☐ 791 Empl. Ret. Inc. | A☐ 871 IRS — Third Party | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights  B☐ 535 Death Penalty | Security Act | 26 USC 7609 | A OR B |
| | B☐ 540 Mandamus & Other | | | |
| | B☐ 550 Civil Rights | | | |
| | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. sec 10b, Sea Act of 1934 Rule 10b-5 Violation, Fraud.

LENGTH OF TRIAL
via __4__ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P 23
DEMAND $ 1,000,000.
CHECK YES only if demanded in complaint
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY  (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE
February 4, 2005

SIGNATURE OF ATTORNEY OF RECORD
Michael Paul Shienvold

FOR OFFICE USE ONLY
533230    250    6
RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____